## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

|  |  |
|---|---|
| MATTHEW MENTING, on behalf of himself and all others similarly situated, | Case No. 1:22-cv-4838 |
| Plaintiff, | CLASS ACTION |
| v. | JURY TRIAL DEMANDED |
| R.R. DONNELLEY & SONS CO., |  |
| Defendant. |  |

## CLASS ACTION COMPLAINT

Plaintiff, Matthew Menting ("Mr. Menting" or "Plaintiff"), brings this action on behalf of himself and all others similarly situated against Defendant, R.R. Donnelley & Sons Co. ("RRD" or "Defendant"), and its present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or other related entities, and alleges as follows:

### INTRODUCTION

1.      On November 29, 2021, RRD, a Fortune 500 marketing, packaging and printing company with a global client base and more than 32,000 employees, lost control over its current and former employees' highly sensitive personal information in a data breach ("Data Breach"), and then failed to start notifying the victims about the breach for more than eight months.

2.      On information and belief, RRD first identified unusual activity on its network in late December 2021, and later concluded the Data Breach occurred between November 29, 2021 and December 23, 2021. However, upon information and belief, even now, RRD has *not* definitively concluded the unauthorized intrusion has been blocked from its system.

3.      Upon information and belief, the Data Breach resulted from a ransomware attack on RRD's systems. RRD's investigation revealed that cybercriminals gained unauthorized access

1

to current and former employees' and customers' personally identifiable information ("PII")
stored on Defendant's network.

4.      On information and belief, cybercriminals bypassed Defendant's inadequate
security systems to access employees' PII in its computer systems.

5.      On information and belief, the stolen PII included, at least, employees' names,
addresses, Social Security numbers, dates of birth and driver license numbers.

6.      On or around August 5, 2022—over eight months after RRD first discovered the
Data Breach—RRD finally began notifying victims about the breach (the "Breach Notice"). **Ex.
A**.[1]

7.      Defendant's Breach Notice obfuscated the nature of the breach and the threat it
posed—refusing to tell its employees how many people were impacted, how the breach
happened, or why it took the Defendant over eight months to begin notifying victims that hackers
had gained access to highly sensitive employee information.

8.      After discovering the Data Breach in late December 2021, RRD's investigation
inexplicably dragged on for months and breach victims were not notified that their PII was at risk
until August 5, 2022.

9.      Following the Data Breach, RRD did not notify its employees in the "most
expedient time possible and without unreasonable delay," as required by Illinois law. It is unclear
when employees began receiving notices of the Data Breach, if any.

---

[1] A true and accurate copy of Defendant's Breach Notice is attached to this Complaint as **Exhibit A**.
Breach Notice obtained from the website of the office of the Maine Attorney General,
https://apps.web.maine.gov/online/aeviewer/ME/40/ad5791f3-1fb7-4c52-bd34-d97802b91f3d.shtml (last
visited September 6, 2022)

10.     In that time, employees were unable to proactively mitigate the Data Breach's impact on them or protect their identities from theft.

11.     Defendant's failure to timely detect and report the Data Breach made its current and former employees vulnerable to identity theft without any warnings to monitor their financial accounts or credit reports to prevent unauthorized use of their PII.

12.     Defendant knew or should have known that each victim of the Data Breach deserved prompt and efficient notice of the Data Breach and assistance in mitigating the effects of PII misuse.

13.     In failing to adequately protect employees' information, adequately notify them about the breach, and obfuscating the nature of the breach, Defendant violated applicable law and harmed thousands of its current and former employees.

14.     Plaintiff and members of the proposed Class are victims of Defendant's negligence and inadequate cyber security measures. Specifically, Plaintiff and members of the proposed Class trusted Defendant with their PII. But Defendant betrayed that trust. Defendant failed to properly use up-to-date security practices to prevent the Data Breach.

15.     Mr. Menting is a former RRD employee and Data Breach victim, receiving RRD's Breach Notice on or about August 15, 2022.

16.     By obtaining, collecting, using, and deriving a benefit from the PII of Plaintiff and Class Members, Defendant assumed legal and equitable duties to those individuals to protect and safeguard that information from unauthorized access and intrusion. Defendant's conduct in breaching these duties amounts to negligence and/or recklessness and violates federal and state statutes.

17. Accordingly, Plaintiff, on his own behalf and on behalf of a class of similarly situated individuals, brings this lawsuit seeking injunctive relief, damages, and restitution, together with costs and reasonable attorneys' fees, the calculation of which will be based on information in Defendant's possession.

18. As a direct and proximate result of Defendant's data security failures and the Data Breach, the PII of Plaintiff and Class Members was compromised through disclosure to an unknown and unauthorized third party, and Plaintiff and Class Members have suffered actual, present, and concrete injuries. These injuries include: (i) the current and imminent risk of fraud and identity theft  (ii) lost or diminished value of PII ; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (iv) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time; and (v) the continued and certainly increased risk to their PII, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) may remain backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII; (vi)  the invasion of privacy; (vii) the compromise, disclosure, theft, and unauthorized use of Plaintiff's and the Class Members' PII; and (viii) emotional distress, fear, anxiety, nuisance and annoyance related to the theft and compromise of their PII.

19. Plaintiff and Class Members seek to remedy these harms and prevent any future data compromise on behalf of themselves and all similarly situated persons whose personal data was compromised and stolen as a result of the Data Breach and remains at risk due to inadequate data security.

20.     Plaintiff and Class Members have a continuing interest in ensuring that their information is and remains safe, and they are entitled to damages, injunctive and other equitable relief to remedy the harm that resulted from Defendant's inadequate security practices.

## PARTIES

21.     Plaintiff, Matthew Menting is a natural person and Wisconsin citizen, residing in Green Bay, Wisconsin, where he intends to remain.

22.     Defendant RRD is an Illinois corporation with its principal place of business located at 35 West Wacker Drive, Chicago, IL 60601.

## JURISDICTION & VENUE

23.     This Court has subject-matter jurisdiction over this action under 28 U.S.C.§ 1332(d) because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from Defendant. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) because all claims alleged herein form part of the same case or controversy.

24.     This Court has general personal jurisdiction over RRD because it is incorporated in Illinois and its principal place of business is located in Illinois.

25.     Venue is proper in this Court because RRD is headquartered in this District.

**BACKGROUND FACTS**

**RRD**

26. RRD describes itself as an integrated multichannel marketing communications service company that has been in business for over 150 years.[2] According to its website, RRD has more than 32,000 employees and has 176 business locations worldwide.

27. On information and belief, RRD accumulates highly sensitive PII of its employees.

28. On information and belief, RRD requires that its employees disclose their PII as part of their employment with RRD, including at least their names, dates of birth, Social Security numbers, addresses and driver's license numbers.

29. Despite recognizing its duty to do so, on information and belief, RRD has not implemented reasonable cybersecurity safeguards or policies to protect employee PII or trained its IT or data security employees to prevent, detect, and stop breaches of RRD's systems. As a result, RRD leaves vulnerabilities in its systems for cybercriminals to exploit and gain access to employee PII.

**RRD Fails to Safeguard Employees' PII**

30. Plaintiff and the proposed Class are current and former RRD employees.

31. RRD requires its employees to provide it with their PII as a condition of employment at RRD.

32. RRD collects and maintains employee PII in its computer systems.

---

[2] https://www.rrd.com/about (last visited September 6, 2022)

33.    In collecting and maintaining the PII, RRD implicitly agrees it will safeguard the data using reasonable means according to its internal policies, as well as state and federal law.

34.    Despite its duties to safeguard employee PII, beginning on or around November 29, 2021, cybercriminals bypassed RRD's inadequate security systems undetected and accessed employee information. **Ex. A**.

35.    On or around December 23, 2021, RRD identified unusual network activity and eventually determined –in July 2022– that cybercriminals had accessed employee PII. **Ex. A**.

36.    Defendant's investigation revealed that its network had been hacked by cybercriminals and that Defendant's inadequate cyber and data security systems and measures allowed those responsible for the cyberattack to obtain files containing a treasure trove of thousands of RRD employees' personal, private, and sensitive information, including but not limited to employees' names, addresses, dates of birth, Social Security numbers and driver's license numbers.

37.    Employees place value in data privacy and security. These are important considerations when deciding who to work and provide services for. Plaintiff would not have accepted the Defendant's employment offer, nor provided his PII, to RRD had he known that RRD does not take all necessary precautions to secure the personal and financial data given to it by its employees.

38.    Despite its duties and alleged commitments to safeguard PII, RRD does not follow industry standard practices in securing employees' PII, as evidenced by the Data Breach and stolen employee PII.

39.    In response to the Data Breach, RRD contends that it "engaged forensic resources and other third parties to assist in its evaluation of the intrusion and shut down all impacted

servers." **Ex. A**. RRD's Breach Notice states that "RRD believes to the best of its knowledge that the intrusion has been removed and effective controls have been further implemented to prevent additional incidents from the attacker." *Id.* However, for the tens of thousands of Data Breach victims, RRD's inability to guarantee data security following the attack, is concerning.

40.     Through its Breach Notice, RRD also recognized the actual imminent harm and injury that flowed from the Data Breach, so it encouraged breach victims to "remain vigilant for incidence of fraud and identify theft by reviewing [their] account statements and monitoring [their] free credit reports and promptly reporting any suspicious activity" **Ex. A.**

41.     RRD has offered some complimentary credit monitoring services to victims, which does not adequately address the lifelong harm that victims will face following the Data Breach. Indeed, the breach involves PII that cannot be changed, such as Social Security numbers and birth dates.

42.     Even with complimentary credit monitoring services, the risk of identity theft and unauthorized use of Plaintiff's and Class Members' PII is still substantially high. The fraudulent activity resulting from the Data Breach may not come to light for years.

43.     Cybercriminals need not harvest a person's Social Security number in order to commit identity fraud or misuse Plaintiff's and the Class's PII. Cybercriminals can cross-reference the data stolen from the Data Breach and combine with other sources to create "Fullz" packages, which can then be used to commit fraudulent account activity on Plaintiff's and the Class's financial accounts.

44.     On information and belief, RRD failed to adequately train its IT and data security employees on reasonable cybersecurity protocols or implement reasonable security measures, causing it to lose control over employee PII. Defendant's negligence is evidenced by its failure to

prevent the Data Breach and stop cybercriminals from accessing PII. Further, the Breach Notice

makes clear that RRD cannot, or will not, determine the full scope of the Data Breach.

1.      To prevent and detect cyber-attacks attacks Defendant could and should have

implemented, as recommended by the United States Government, the following measures:

- Implement an awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.

- Enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender Policy Framework (SPF), Domain Message Authentication Reporting and Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to prevent email spoofing.

- Scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users.

- Configure firewalls to block access to known malicious IP addresses.

- Patch operating systems, software, and firmware on devices. Consider using a centralized patch management system.

- Set anti-virus and anti-malware programs to conduct regular scans automatically.

- Manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.

- Configure access controls—including file, directory, and network share permissions—with least privilege in mind. If a user only needs to read specific files, the user should not have write access to those files, directories, or shares.

- Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.

- Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.

- Consider disabling Remote Desktop protocol (RDP) if it is not being used.

- Use application whitelisting, which only allows systems to execute programs known

and permitted by security policy.

- Execute operating system environments or specific programs in a virtualized environment.

- Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.

45.     To prevent and detect cyber-attacks Defendant could and should have

implemented, as recommended by the United States Cybersecurity & Infrastructure Security

Agency, the following measures:

- Update and patch your computer. Ensure your applications and operating systems (OSs) have been updated with the latest patches. Vulnerable applications and OSs are the target of most ransomware attacks….

- Use caution with links and when entering website addresses. Be careful when clicking directly on links in emails, even if the sender appears to be someone you know. Attempt to independently verify website addresses (e.g., contact your organization's helpdesk, search the internet for the sender organization's website or the topic mentioned in the email). Pay attention to the website addresses you click on, as well as those you enter yourself. Malicious website addresses often appear almost identical to legitimate sites, often using a slight variation in spelling or a different domain (e.g., .com instead of .net)….

- Open email attachments with caution. Be wary of opening email attachments, even from senders you think you know, particularly when attachments are compressed files or ZIP files.

- Keep your personal information safe. Check a website's security to ensure the information you submit is encrypted before you provide it….

- Verify email senders. If you are unsure whether or not an email is legitimate, try to verify the email's legitimacy by contacting the sender directly. Do not click on any links in the email. If possible, use a previous (legitimate) email to ensure the contact information you have for the sender is authentic before you contact them.

- Inform yourself. Keep yourself informed about recent cybersecurity threats and up to date on ransomware techniques. You can find information about known phishing attacks on the Anti-Phishing Working Group website. You may also want to sign up for CISA product notifications, which will alert you when a new Alert, Analysis Report, Bulletin, Current Activity, or Tip has been published.

- Use and maintain preventative software programs. Install antivirus software, firewalls, and email filters—and keep them updated—to reduce malicious network traffic….

46.    To prevent and detect cyber-attacks attacks Defendant could and should have

implemented, as recommended by the Microsoft Threat Protection Intelligence Team, the

following measures:

Secure internet-facing assets

-Apply latest security updates
-Use threat and vulnerability management
-Perform regular audit; remove privileged credentials;

Thoroughly investigate and remediate alerts

-      Prioritize and treat commodity malware infections as potential full
       compromise;

Include IT Pros in security discussions

-      Ensure collaboration among [security operations], [security admins], and
       [information technology] admins to configure servers and other endpoints
       securely;

Build credential hygiene

-      Use [multifactor authentication] or [network level authentication] and use
       strong, randomized, just-in-time local admin passwords;

Apply principle of least-privilege

-      Monitor for adversarial activities
-      Hunt for brute force attempts
-      Monitor for cleanup of Event Logs
-      Analyze logon events;

Harden infrastructure

-      Use Windows Defender Firewall
-      Enable tamper protection
-      Enable cloud-delivered protection

- Turn on attack surface reduction rules and [Antimalware Scan Interface] for Office [Visual Basic for Applications].[3]

47. Given that Defendant was storing the PII of Plaintiff and Class Members, Defendant could and should have implemented all of the above standard measures to prevent and detect cyber-attacks.

48. The occurrence of the Data Breach and Defendant's failure to timely detect it indicates that Defendant failed to adequately implement one or more of the above measures to prevent cyber attacks, resulting in the Data Breach and the exposure of the PII of thousands of RRD's current and former employees, including Plaintiff and Class Members.

**Plaintiff's Experience**

49. Plaintiff Menting is a former RRD employee, having worked for the company between 2016-2017 and again between 2017- October 2018.

50. As a condition of his employment, RRD required Plaintiff to provide it with his PII.

51. Plaintiff provided his PII to RRD and trusted the company would use reasonable measures to protect it according to RRD's internal policies, as well as state and federal law.

52. To date, Defendant has done next to nothing to adequately protect Plaintiff and Class Members, or to compensate them for their injuries sustained in this Data Breach.

53. Plaintiff typically takes measures to protect his PII and is very careful about sharing his PII. Plaintiff has never knowingly transmitted unencrypted PII over the internet or other unsecured source.

---

[3] *See* Human-operated ransomware attacks: A preventable disaster (Mar 5, 2020), *available at:* https://www.microsoft.com/security/blog/2020/03/05/human-operated-ransomware-attacks-a-preventable-disaster/ (last visited Sept. 1, 2022).

54.     Plaintiff stores any documents containing his PII in a safe and secure location, and he diligently chooses unique usernames and passwords for his online accounts.

55.     As a result of the Data Breach, Plaintiff has suffered a loss of time and has spent and continues to spend a considerable amount of time on issues related to this Data Breach. In response to the Data Breach, Plaintiff has spent significant time monitoring his accounts and credit score and has sustained emotional distress in addition to his lost time. This is time that was lost and unproductive and took away from other activities and duties.

56.     Plaintiff also suffered actual injury in the form of damages to and diminution in the value of his PII—a form of intangible property that he entrusted to Defendant for the purpose of obtaining employment with Defendant, which was compromised in and as a result of the Data Breach.

57.     Plaintiff suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of his privacy.

58.     Plaintiff has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his PII, especially her Social Security Number, being placed in the hands of criminals.

59.     Defendant obtained and continues to maintain Plaintiff's PII and has a continuing legal duty and obligation to protect that PII from unauthorized access and disclosure. Plaintiff's PII was compromised and disclosed as a result of the Data Breach.

60.     As a result of the Data Breach, Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. As a result of the Data Breach, Plaintiff is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

61.     Plaintiff has and will spend considerable time and effort monitoring his accounts to protect himself from identity theft. Plaintiff fears for his personal financial security and uncertainty over what PII was exposed in the Data Breach. Plaintiff has and is experiencing feelings of anxiety, sleep disruption, stress, fear, and frustration because of the Data Breach. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that the law contemplates and addresses.

**Plaintiff and the Proposed Class Face Significant Risk of Identity Theft**

62.     Plaintiff and members of the proposed Class have suffered injury from the misuse of their PII that can be directly traced to Defendant.

63.     The ramifications of RRD's failure to keep Plaintiff and the Class's PII secure are severe. Identity theft occurs when someone uses another's personal and financial information such as that person's name, account number, Social Security number, driver's license number, date of birth, or other information, without permission, to commit fraud or other crimes.

64.     The types of personal data compromised and potentially stolen in the RRD Data Breach is highly valuable to identity thieves. The employees' stolen PII can be used to gain access to a variety of existing accounts and websites to drain assets, bank accounts or open phony credit cards.

65.     As a result of RRD's failure to prevent the Data Breach, Plaintiff and the proposed Class have suffered and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. They have suffered, or are at an increased risk of suffering:

      a.   The loss of the opportunity to control how their PII is used;

      b.   The diminution in value of their PII;

    c.   The compromise and continuing publication of their PII;

    d.   Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

    e.   Lost opportunity costs and lost wages associated with the time and effort expended addressing and trying to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

    f.   Delay in receipt of tax refund monies;

    g.   Unauthorized use of stolen PII; and

    h.   The continued risk to their PII, which remains in the possession of RRD and is subject to further breaches so long as RRD fails to undertake the appropriate measures to protect the PII in their possession.

66.    Stolen PII is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PII can be worth up to $1,000.00 depending on the type of information obtained.[4]

67.    The value of Plaintiff's and the proposed Class's PII on the black market is considerable. Stolen PII trades on the black market for years, and criminals frequently post stolen private information openly and directly on various "dark web" internet websites, making the information publicly available, for a substantial fee of course.

68.    It can take victims years to stop identity or PII theft, giving criminals time to sell that information for cash.

---

[4] *See* Here's How Much Your Personal Information Is Selling for on the Dark Web, Experian, https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last visited September 6, 2022).

69. One such example of criminals using PII for profit is the development of "Fullz" packages.

70. Cybercriminals can cross-reference multiple sources of PII to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.[5]

71. The development of "Fullz" packages means that stolen PII from the Data Breach can easily be used to link and identify it to Plaintiff and the proposed Class's phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the PII stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and members of the proposed Class, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff and other members of the proposed Class's stolen PII is being misused, and that such misuse is fairly traceable to the Data Breach.

72. Additionally, Social Security numbers are among the worst kind of PII to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change. The Social Security Administration stresses that the loss of an individual's Social Security number, as is the case here, can lead to identity theft and extensive financial fraud:

> A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to

---

[5] *Id.*

apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[6]

73.     What is more, it is no easy task to change or cancel a stolen Social Security number. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. In other words, preventive action to defend against the possibility of misuse of a Social Security number is not permitted; an individual must show evidence of actual, ongoing fraud activity to obtain a new number.

74.     Even then, a new Social Security number may not be effective. According to Julie Ferguson of the Identity Theft Resource Center, "[t]he credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[7]

75.     Defendant disclosed the PII of Plaintiff and members of the proposed Class for criminals to use in the conduct of criminal activity. Specifically, Defendant opened up, disclosed, and exposed the PII of Plaintiff and members of the proposed Class to people engaged in disruptive and unlawful business practices and tactics, including online account hacking, unauthorized use of financial accounts, and fraudulent attempts to open unauthorized financial accounts (i.e., identity fraud), all using the stolen PII.

---

[6] Social Security Administration, *Identity Theft and Your Social Security Number*, *available at*: https://www.ssa.gov/pubs/EN-05-10064.pdf (last visited Jan. 19, 2022).
[7] Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), *available at*: http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millionsworrying-about-identity-theft (last visited Jan. 19, 2022).

76.     RRD's use of outdated and insecure computer systems and software that are easy to hack, and its failure to maintain adequate security measures and an up-to-date technology security strategy, demonstrates a willful and conscious disregard for privacy, and has exposed the PII of Plaintiff and thousands of members of the proposed class to unscrupulous operators, con artists and criminals.

77.     Defendant's failure to properly notify Plaintiff and members of the proposed Class of the Data Breach exacerbated Plaintiff and members of the proposed Class's injury by depriving them of the earliest ability to take appropriate measures to protect their PII and take other necessary steps to mitigate the harm caused by the Data Breach.

78.     Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class is incurring and will continue to incur such damages in addition to any fraudulent use of their PII.

79.     The injuries to Plaintiff and Class Members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the PII of Plaintiff and Class Members.

80.     The ramifications of Defendant's failure to keep secure the PII of Plaintiffs and Class Members are long lasting and severe. Once PII is stolen, particularly Social Security numbers, fraudulent use of that information and damage to victims may continue for years.

**RRD Failed to Adhere to FTC Guidelines.**

81.     According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making.  To that end, the FTC has issued numerous guidelines identifying best data security practices that businesses, such as Defendant, should employ to protect against the unlawful exposure of PII.

82.    In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established guidelines for fundamental data security principles and practices for business.  The guidelines explain that businesses should:

a.    protect the personal customer information that they keep;

b.    properly dispose of personal information that is no longer needed;

c.    encrypt information stored on computer networks;

d.    understand their network's vulnerabilities; and

e.    implement policies to correct security problems.

83.    The guidelines also recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of a breach.

84.    The FTC recommends that companies not maintain information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

85.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

86.     Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to consumers' PII constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

## CLASS ACTION ALLEGATIONS

87.     Plaintiff brings this action pursuant to FRCP 23(b)(2) and (b)(3) on behalf of himself and all members of the proposed class (the "Class") tentatively defined as:

> All persons whose PII was compromised in the Data Breach disclosed by RRD in August 2022, including all those who were sent a notice of the Data Breach.

88.     The following people are excluded from the Class: (1) any judge or magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, affiliated entities, and any entity in which the Defendant or its parent has a controlling interest, and their current or former officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

89.     The Class defined above is identifiable through RRD's business records.

90.     Plaintiff reserves the right to amend the Class definition or add a Class if further information and discovery indicate that other classes should be added and if the definition of the Class should be narrowed, expanded, or otherwise modified.

91.     This action satisfies the numerosity, commonality, typicality, and adequacy requirements of Fed. R. Civ. P. 23.

**Numerosity**

92.     The exact number of Class members is unknown but is estimated to be up to

thousands of former and current RRD employees at this time, and individual joinder in this case

is impracticable. Class Members can be easily identified through Defendant's records and

objective criteria permitting self-identification in response to notice, and notice can be provided

through techniques similar to those customarily used in other data breach, employee breach of

contract, unlawful trade practices, and class action controversies.

93.     Plaintiff is a member of the Class.

**Commonality, Predominance, and Superiority**

94.     There are questions of law and fact common to Plaintiff and to the proposed

Class, including but not limited to the following:

   a.   Whether RRD had a duty to use reasonable care in safeguarding Plaintiff's and
        the Class's PII;

   b.   Whether RRD failed to implement and maintain reasonable security procedures
        and practices appropriate to the nature and scope of the information compromised
        in the Data Breach;

   c.   Whether RRD was negligent in maintaining, protecting, and securing PII;

   d.   Whether RRD breached contract promises to safeguard Plaintiff's and the Class's
        PII;

   e.   Whether RRD took reasonable measures to determine the extent of the Data
        Breach after discovering it;

   f.   Whether RRD's Breach Notice was reasonable;

   g.   Whether the Data Breach caused Plaintiff and the Class injuries;

   h.   What the proper damages measure is;

   i.   Whether RRD violated the statutes alleged in this Complaint; and

   j.   Whether Plaintiff and the Class are entitled to damages, treble damages, or

        injunctive relief.

95.   Common questions of law and fact predominate over questions affecting only

individual class members, and a class action is the superior method for fair and efficient

adjudication of the controversy.

96.   Plaintiff's claims are typical of the claims of Class members.

### Adequacy

97.   Plaintiff is an adequate representative of the Class because his interests do not

conflict with the interests of the Class, he will fairly and adequately protect the interests of the

Class, and he is represented by counsel skilled and experienced in class actions.

### FIRST CLAIM FOR RELIEF
### Negligence
### (On Behalf of Plaintiff and the Class)

98.   Plaintiff and the members of the Class incorporate the above allegations as if fully

set forth herein.

99.   Plaintiff and members of the Class entrusted their PII to Defendant. Defendant

owed to Plaintiff and other members of the Class a duty to exercise reasonable care in handling

and using the PII in its care and custody, including implementing industry-standard security

procedures sufficient to reasonably protect the information from the Data Breach, theft, and

unauthorized use that came to pass, and to promptly detect attempts at unauthorized access.

100.   Defendant owed a duty of care to Plaintiff and members of the Class because it

was foreseeable that Defendant's failure to adequately safeguard their PII in accordance with

state-of-the-art industry standards for data security would result in the compromise of that PII—
just like the Data Breach that ultimately came to pass. Defendant acted with wanton and reckless
disregard for the security and confidentiality of Plaintiff's and members of the Class's PII by
disclosing and allowing access to employee PII to unknown third parties and by failing to
properly supervise both the way the PII was stored, used, and exchanged, and those in its employ
who made that happen.

101.    Moreover, Defendant owed Plaintiff and the Class a fiduciary duty of
confidentiality, as Defendant was the employer of the employees affected.

102.    Defendant owed to Plaintiff and members of the Class a duty to notify them
within a reasonable time frame of any breach to the security of their PII. Defendant also owed a
duty to timely and accurately disclose to Plaintiff and members of the Class the scope, nature,
and occurrence of the Data Breach. This duty is required and necessary for Plaintiff and
members of the Class to take appropriate measures to protect their PII, to be vigilant in the face
of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the
Data Breach.

103.    Defendant owed these duties to Plaintiff and members of the Class because they
are members of a well-defined, foreseeable, and probable class of individuals whom Defendant
knew or should have known would suffer injury-in-fact from Defendant's inadequate security
protocols. Defendant actively sought and obtained Plaintiff's and members of the Class's PII for
employment. Plaintiff and members of the Class needed to provide their PII to Defendant as
prospective employees, as a condition of employment. Defendant negligently retained this
information.

104.     The risk that unauthorized persons would try to gain access to the PII and misuse it was foreseeable. Given that Defendant holds vast amounts of PII, it was inevitable that unauthorized individuals would try to access Defendant's databases containing the PII—whether by ransomware or otherwise.

105.     PII is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the PII of Plaintiff and members of the Class and the importance of exercising reasonable care in handling it.

106.     Defendant breached its duties by failing to exercise reasonable care in supervising its agents, contractors, vendors, and suppliers, and in handling and securing the personal information and PII of Plaintiff and members of the Class which actually and proximately caused the Data Breach and Plaintiff's and members of the Class's injury.

107.     Defendant further breached its duties by failing to provide reasonably timely notice of the Data Breach to Plaintiff and members of the Class, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiff's and members of the Class's injuries-in-fact.

108.     As a direct and traceable result of Defendant's negligence or negligent supervision, Plaintiff, and members of the Class have suffered or will suffer damages, including but not limited to monetary damages, loss of privacy, lost time, loss of value of PII, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

109.     Defendant's breach of its common-law duties to exercise reasonable care and its failures and negligence actually and proximately caused Plaintiff's and members of the Class's actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their PII by criminals, improper disclosure of their PII, lost benefit of their bargain, lost value of their PII,

and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendant's negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

## SECOND CLAIM FOR RELIEF
### Negligence Per Se
### (On Behalf of Plaintiff and the Class)

110.    Plaintiff and the members of the Class incorporate the above allegations as if fully set forth herein.

111.     Pursuant to the FTC Act, 15 U.S.C. § 45, Defendant has a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff's and members of the Class's PII.

112.    The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendant's duty to protect Plaintiff and the members of the Class's sensitive PII. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect customers or, in this case, employees' PII.

113.    Defendant violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect its employees' PII and not complying with applicable industry standards as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PII Defendant had collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to its employees in the event of a breach, which ultimately came to pass.

114.    The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and members of the Class.

115.    Defendant had a duty to Plaintiff and the members of the Class to implement and maintain reasonable security procedures and practices to safeguard Plaintiff's and the Class's PII.

116.    Defendant breached its respective duties to Plaintiff and members of the Class under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and members of the Class's PII.

117.    Defendant's violation of Section 5 of the FTC Act and its failure to comply with applicable laws and regulations constitutes negligence per se.

118.    But for Defendant's wrongful and negligent breach of its duties owed to Plaintiff and members of the Class, Plaintiff and members of the Class would not have been injured.

119.    The injury and harm suffered by Plaintiff and members of the Class were the reasonably foreseeable result of Defendant's breach of its duties. Defendant knew or should have known that Defendant was failing to meet its duties and that its breach would cause Plaintiff and members of the Class to suffer the foreseeable harms associated with the exposure of their PII.

120.    Had Plaintiff and members of the Class known that Defendant did not adequately protect employees' PII, Plaintiff and members of the Class would not have entrusted Defendant with their PII.

121.    As a direct and proximate result of Defendant's negligence per se, Plaintiff and members of the Class have suffered harm, including loss of time and money resolving fraudulent charges loss of time and money obtaining protections against future identity theft; lost control

over the value of their PII; unreimbursed losses relating to fraudulent charges; losses relating to exceeding credit and debit card limits and balances; harm resulting from damaged credit scores and information; and other harm resulting from the unauthorized use or threat of unauthorized use of stolen personal information, entitling them to damages in an amount to be proven at trial.

### THIRD CLAIM FOR RELIEF
### Breach of Implied Contract
### (On Behalf of Plaintiff and the Class)

122.    Plaintiff and the members of the Class incorporate the above allegations as if fully set forth herein.

123.    Defendant offered to employ Plaintiff and members of the Class in exchange for their PII.

124.    Plaintiff and the members of the Class accepted Defendant's offer by providing PII to Defendant in exchange for employment with Defendant. Plaintiff and the Class then provided labor services to Defendant.

125.    In turn, and through internal policies, Defendant implicitly agreed it would not disclose the PII it collects to unauthorized persons. Defendant also implicitly promised to safeguard employee PII.

126.

127.    Also implicit in the parties' agreement was that Defendant would provide Plaintiff and members of the Class with prompt and adequate notice of all unauthorized access and/or theft of their PII.

128.    These agreements were not contained in any express contract.

129.    Plaintiff and the members of the Class would not have entrusted their PII to Defendant in the absence of such agreement with Defendant.

130. Defendant materially breached the contracts it had entered with Plaintiff and members of the Class by failing to safeguard such information and failing to notify them promptly of the intrusion into its computer systems that compromised such information. Defendant also breached the implied contracts with Plaintiff and members of the Class by:

    a. Failing to properly safeguard and protect Plaintiff's and members of the Class's PII;

    b. Failing to comply with industry standards as well as legal obligations that are necessarily incorporated into the parties' agreement; and

    c. Failing to ensure the confidentiality and integrity of electronic PII that Defendant created, received, maintained, and transmitted.

131. The damages sustained by Plaintiff and members of the Class as described above were the direct and proximate result of Defendant's material breaches of its agreement(s).

132. Plaintiff and members of the Class have performed under the relevant agreements, or such performance was waived by the conduct of Defendant.

133. The covenant of good faith and fair dealing is an element of every contract. All such contracts impose upon each party a duty of good faith and fair dealing. The parties must act with honesty in fact in the conduct or transactions concerned. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.

134.    Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty.

135.    Defendant failed to advise Plaintiff and members of the Class of the Data Breach promptly and sufficiently.

136.    In these and other ways, Defendant violated its duty of good faith and fair dealing.

137.    Plaintiff and members of the Class have sustained damages because of Defendant's breaches of its agreement, including breaches of it through violations of the covenant of good faith and fair dealing.

138.    Plaintiff, on behalf of himself and the Class, seeks compensatory damages for breach of implied contract, which includes the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest, and costs.

**FOURTH CAUSE OF ACTION**
**Unjust Enrichment**
**(On Behalf of the Plaintiff and the Class)**

139.    Plaintiff and the members of the Class incorporate the above allegations as if fully set forth herein.

140.    This claim is plead in the alternative to the breach of implied contractual duty claim.

141.    Plaintiff and members of the Class conferred a benefit upon Defendant in the form of services through employment. Defendant also benefited from the receipt of Plaintiff's and members of the Class's PII, as this was used to facilitate their employment.

142.    Defendant appreciated or had knowledge of the benefits conferred upon itself by Plaintiff and members of the Class.

143.     Under principals of equity and good conscience, Defendant should not be permitted to retain the full value of Plaintiff and the proposed Class's services and their PII because Defendant failed to adequately protect their PII. Plaintiff and the proposed Class would not have provided their PII or worked for Defendant at the payrates they did, had they known Defendant would not adequately protect their PII.

144.     Defendant should be compelled to disgorge into a common fund to benefit Plaintiff and members of the Class all unlawful or inequitable proceeds received by it as a result of the conduct and Data Breach alleged here.

145.

**FIFTH CLAIM FOR RELIEF**
**Invasion of Privacy**
**(On Behalf of the Plaintiff and the Class)**

146.     Plaintiff and the members of the Class incorporate the above allegations as if fully set forth herein.

147.     Plaintiff and the Class had a legitimate expectation of privacy regarding their highly sensitive and confidential PII and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

148.     Defendant owed a duty to its employees, including Plaintiff and the Class, to keep this information confidential.

149.     The unauthorized acquisition (*i.e.*, theft) by a third party of Plaintiff's and Class Members' PII is highly offensive to a reasonable person.

150.     The intrusion was into a place or thing which was private and entitled to be private. Plaintiff and the Class disclosed their sensitive and confidential information to Defendant as part of Defendant's employment, but did so privately, with the intention that their

information would be kept confidential and protected from unauthorized disclosure. Plaintiff and the Class were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

151.     The Data Breach constitutes an intentional interference with Plaintiff's and the Class's interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

152.     Defendant acted with a knowing state of mind when it permitted the Data Breach because it knew its information security practices were inadequate.

153.     Defendant acted with a knowing state of mind when it failed to notify Plaintiff and the Class in a timely fashion about the Data Breach, thereby materially impairing their mitigation efforts.

154.     Acting with knowledge, Defendant had notice and knew that its inadequate cybersecurity practices would cause injury to Plaintiff and the Class.

155.     As a proximate result of Defendant's acts and omissions, the private and sensitive PII of Plaintiff and the Class were stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiff and the Class to suffer damages.

156.     Unless and until enjoined and restrained by order of this Court, Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Class since their PII are still maintained by Defendant with their inadequate cybersecurity system and policies.

157.     Plaintiff and the Class have no adequate remedy at law for the injuries relating to Defendant's continued possession of their sensitive and confidential records. A judgment for

monetary damages will not end Defendant's inability to safeguard the PII of Plaintiff and the Class.

158.    In addition to injunctive relief, Plaintiff, on behalf of himself and the other members of the Class, also seeks compensatory damages for Defendant's invasion of privacy, which includes the value of the privacy interest invaded by Defendant, the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest, and costs.

**PRAYER FOR RELIEF**

Plaintiff and members of the Class demand a jury trial on all claims so triable and request that the Court enter an order:

A.    Certifying this case as a class action on behalf of Plaintiff and the proposed Class, appointing Plaintiff as class representative, and appointing his counsel to represent the Class;

B.    Awarding declaratory and other equitable relief as is necessary to protect the interests of Plaintiff and the Class;

C.    Awarding injunctive relief as is necessary to protect the interests of Plaintiff and the Class;

D.    Enjoining RRD from further deceptive and unfair practices and making untrue statements about the Data Breach and the stolen PII;

E.    Awarding Plaintiff and the Class damages that include compensatory, exemplary, punitive damages, and statutory damages, including pre- and post-judgment interest, in an amount to be proven at trial;

F.    Awarding restitution and damages to Plaintiff and the Class in an amount to be determined at trial;

G.    Awarding attorneys' fees and costs, as allowed by law;

H.     Granting Plaintiff and the Class leave to amend this complaint to conform to the

evidence produced at trial; and

I.     Granting such other or further relief as may be appropriate under the

circumstances.

### JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.


Dated:  September 8, 2022                    Respectfully submitted,

                                             By:  */s/ Samuel J. Strauss*
                                                  Samuel J. Strauss
                                                  sam@turkestrauss.com
                                                  Raina C. Borrelli
                                                  raina@turkestrauss.com
                                                  Alex Phillips
                                                  alexp@turkestrauss.com
                                                  TURKE & STRAUSS LLP
                                                  613 Williamson St., Suite 201
                                                  Madison, WI 53703
                                                  Telephone (608) 237-1775
                                                  Facsimile: (608) 509-4423

                                                  *Attorneys for Plaintiff and the Proposed Class*